Jyotin Hamíd (jhamid@debevoise.com)
Wendy B. Reilly (wbreilly@debevoise.com)
Tricia B. Sherno (tbsherno@debevoise.com)
DEBEVOISE & PLIMPTON LLP
919 Third Avenue
New York, New York 10022
Telephone: (212) 909-1031
Fax: (212) 909-6836

*Attorneys for GoldenTree Asset Management LP*

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

- - - - - - - - - - - - - - - - - - - - - - - - - - - - x

GOLDENTREE ASSET MANAGEMENT LP,          :

       Plaintiff,          :

       vs.          :          14 Civ. _____ (   )

TEAMSTERS PENSION TRUST FUND OF          :          **COMPLAINT**
PHILADELPHIA AND VICINITY,

       Defendant.          :

- - - - - - - - - - - - - - - - - - - - - - - - - - - - x

Plaintiff GoldenTree Asset Management LP ("GTAM"), by its attorneys Debevoise &
Plimpton LLP, for its complaint against Defendant Teamsters Pension Trust Fund of
Philadelphia and Vicinity (the "Fund") for declaratory relief alleges as follows:

## Nature of Action

1.      This is an action for declaratory relief.  The Fund asserts that GTAM is jointly
and severally liable with a company called SourceInterLink Distribution, LLC ("Source") for
"withdrawal liability" to the Fund under the provisions of the Employee Retirement Income
Security Act of 1974 ("ERISA"), as amended by the Multiemployer Pension Plan Amendments
Act of 1980 ("MPPAA").  The Fund has demanded that GTAM begin to make quarterly
installment payments in connection with this purported "withdrawal liability."  But, in fact,

neither GTAM nor any of the clients or entities to which it provides investment advisory or management services has any "withdrawal liability" to the Fund.  That is because neither GTAM nor any such entities – individually or collectively – meet the statutory definition of an "employer" under ERISA § 4001(b)(1).

## Parties

2.     Plaintiff is a limited partnership formed and organized under the laws of Delaware, with its principal place of business at 300 Park Avenue, 21st Floor, New York, New York 10022.

3.     Defendant is a multi-employer pension plan within the meaning of 29 U.S.C. § 1002(37)(A) and 29 U.S.C. § 1301(a)(3), with its principal place of business at 6981 N. Park Drive, Suite 400, Pennsauken, New Jersey 08109.

## Jurisdiction and Venue

4.     This Court has subject matter jurisdiction over the instant dispute pursuant to 28 U.S.C. § 1331 (federal question) because this action arises under 29 U.S.C. §§ 1381-1383, 1399(c)(2) and 1451(a)(1) and (c).

5.     This Court has authority to award the declaratory relief that GTAM is requesting pursuant to 28 U.S.C. § 2201.

6.     This Court has personal jurisdiction over the Fund pursuant to 29 U.S.C. § 1451(d).

7.     Venue is proper in this District pursuant to 28 U.S.C. § 1391(b)(2) and 29 U.S.C. § 1451(d) because a substantial part of the events or omissions giving rise to the claim occurred in this District.

## Background

8.     Source was a contributor to the Fund pursuant to a collective bargaining agreement.

9.     According to the Fund, on or about May 31, 2014, Source effected a "complete withdrawal" (within the meaning of 29 U.S.C. § 1383) from the Fund, triggering "withdrawal liability" for Source under ERISA and the MPPAA.

10.     On or about June 23, 2014, Source and certain of its affiliates filed a voluntary petition for reorganization under Chapter 11 in the United States Bankruptcy Court for the District of Delaware.

11.     On or about September 12, 2014, William J. Einhorn, Administrator for the Fund, sent GTAM a letter specifically asserting that GTAM is jointly and severally liable with Source for its purported "withdrawal liability." The Fund asserted that, in connection with such purported liability, GTAM is "required to make a total of 68 quarterly installments to the Fund, each in the amount of $156,461.21 and a final partial quarterly installment of $63,883.84."

## GTAM Has No Liability To The Fund

12.     To be subject to withdrawal liability under the MPPAA, GTAM and the entities to which it provides services must meet the statutory definition of an "employer" under ERISA § 4001(b)(1). More specifically, some grouping of such entities would have to be both (1) "trades or businesses" and (2) under "common control" with Source, having "at least 80 percent of total combined voting power of all classes of stock entitled to vote of such corporation or at least 80 percent of the total value of shares of all classes of stock of such corporation" as of the date of Source's withdrawal from the Fund. 26 C.F.R. § 1.414(c)-2(b)(2)(i)(A); ERISA § 4001(b)(1). No such grouping exists.

13.    GTAM is an asset management firm that provides investment advisory or management services to a diverse array of clients and entities.  The clients and entities to which GTAM provides investment advisory or management services have different objectives, investment strategies, legal structures and ownership.

14.    GTAM itself does not hold, and has never held, any of the equity of Source or its parent company Source Home Entertainment, LLC ("Source Entertainment").

15.    Eighteen of the entities to which GTAM provides services did own varying amounts of Source Entertainment stock as of May 31, 2014, but none of them crossed the 80% threshold as to voting power or stock ownership.

16.    Even if the interests of all of these eighteen entities to which GTAM provides services could be aggregated -- which they cannot -- those interests would only add up to 75.18% of the voting stock of Source Entertainment, beneath the MPPAA's 80% requirement for establishing withdrawal liability.

17.    As a result, the only way that GTAM and these eighteen entities could be subject to withdrawal liability is if they were "trades or businesses" under "common control" with Source, owning at least 80% of Source's stock as of May 31, 2014.  But this is not the case.

18.    None of the eighteen entities to which GTAM provides services held more than 18.51% of Source Entertainment equity (or 16.85% of the voting stock) as of May 31, 2014.

19.    Thus, none of these entities can be subject to withdrawal liability unless their interests can be aggregated across the 80% threshold, which they cannot.  Aggregation of the eighteen entities to which GTAM provides services would be inappropriate given their distinct legal structures, ownership and investment strategies. Each of the eighteen entities has different owners and in each case the value of the stock held by each entity belongs to each distinct owner,

not to GTAM or any of the other entities. Each of the eighteen entities is a separate legal entity with unique ownership and none of them is under "common control" with Source.

20.     For example, among these eighteen entities are ten Separately Managed Accounts ("SMAs") owned by individual clients. The clients who own the SMAs include large public employee pension plans and other individual entities. Each owner of an SMA has no other relationship with the other owners of SMAs. SMA account holders own the securities in their accounts and have the authority to replace GTAM, should they so desire.

21.     The SMAs are not "trades or businesses". An entity that merely invests money for the purpose of earning investment returns cannot be considered a "trade or business" for withdrawal liability purposes. No matter how large an investor's portfolio or how much managerial attention an investor pays to its investments, investing alone does not constitute a "trade or business."

22.     The SMAs – which are separately owned by individual investors – also are not under "common control" with Source. The SMAs are investment accounts owned by individual clients for the sole purpose of making investments and earning an investment return. Most of these entities invest principally in passive positions without an intent to participate in the management of the issuer. Once the SMAs are removed from the calculus – as they must be – the remaining holdings, even if aggregated, come nowhere near the 80% threshold.

23.     Aggregation of the holdings of the other eight entities would be unwarranted in any event. Those entities, which include hedge funds, debt trading funds and other investment vehicles, have a diverse array of objectives, investment strategies, legal structures and ownership. They are not under "common control" with Source. For example, GTAM manages Collateralized Loan Obligations ("CLOs"). These CLOs do not invest in equity, and they do not

seek to play any role in the management or operations of the issuers of the debt underlying the CLOs. Typically, CLOs acquire equity, and any attendant voting or control rights, only in the unusual circumstance in which debt interests are converted to equity interests through the restructuring of an issuer's debt. GTAM also provides services to various categories of hedge funds and other entities, each with its own distinct investment strategy.

24.    Because neither GTAM nor any of the entities to which it provides services – individually or collectively – meet the statutory definition of an "employer" under ERISA § 4001(b)(1), none of them have withdrawal liability to the Fund.

**FIRST CAUSE OF ACTION**
**(Declaratory Judgment)**

25.    GTAM repeats and realleges all of the allegations above as if fully set out herein.

26.    Pursuant to 28 U.S.C. § 2201(a), GTAM seeks a declaration of this Court that neither GTAM nor any of the entities to which it provides services has withdrawal liability to the Fund or is required to make any payments to the Fund.

27.    Declaratory relief is appropriate because there is an actual justiciable controversy between the parties of sufficient immediacy to justify the relief sought. The Fund has taken the unequivocal position that GTAM is subject to withdrawal liability under the MPPAA.

28.    Declaratory relief would serve the useful purpose of clarifying the parties' rights and financial liabilities under ERISA and the MPPAA.

**Prayer for Relief**

WHEREFORE, GTAM respectfully requests that this Court enter a Judgment, in favor of GTAM and against the Fund, providing as follows:

A.    A declaration that neither GTAM nor any of the entities to which it provides services has withdrawal liability to the Fund or is required to make any payments to the Fund;

6

B.    An award to GTAM of its attorneys' fees and costs pursuant to applicable provisions of ERISA and/or the MPPAA; and

C.    Granting such other and further relief to GTAM as the Court deems just and proper.

Dated: New York, New York
November 10, 2014

Respectfully submitted,

DEBEVOISE & PLIMPTON LLP

By: _____

Jyotin Hamid (jhamid@debevoise.com)
Wendy B. Reilly (wbreilly@debevoise.com)
Tricia B. Sherno (tbsherno@debevoise.com)
919 Third Avenue
New York, New York 10022
(212) 909-1031

*Attorneys for GoldenTree Asset Management LP*

7